IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HACIENDA MANAGEMENT, S. DE R.L. DE C.V., <br><br> Plaintiff, <br><br> v. <br><br> STARWOOD CAPITAL GROUP GLOBAL I LLC, STARWOOD GLOBAL OPPORTUNITY FUND VI-A, STARWOOD GLOBAL OPPORTUNITY FUND VI-B, SOF-VI MANAGEMENT, LLC and STARWOOD CAPITAL GROUP MANAGEMENT LLC, <br><br> Defendants. | Case No. 12-0395 SC <br><br> ORDER GRANTING DEFENDANTS' <u>MOTION TO DISMISS</u> |

## I. **INTRODUCTION**

This case concerns Defendants' alleged tortious interference with Plaintiff's contract to manage a luxury residential development property in Cabo San Lucas, Mexico, known as the Hacienda Beach Club and Residences (the "Hacidenda Beach Club" or the "Project"). ECF No. 1 ("Compl."). Defendants now move to dismiss the action on the ground that Plaintiff's claims are barred by res judicata because Plaintiff brought similar contract claims in earlier arbitration proceedings. ECF No. 22 ("MTD"). The motion is fully briefed. ECF Nos. 26 ("Opp'n"), 32 ("Reply"). The Court also requested supplemental briefing, which the parties have

provided. ECF Nos. 39 ("Defs.' Supp. Br."), 40 ("Pl.'s Supp. Br."). Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for decision without oral argument. As detailed below, the Court GRANTS Defendants' motion to dismiss.

## II. BACKGROUND

The Hacienda Beach Club is owned by Desarrollo, a Mexican trust, whose indirect, controlling investors are investment funds, Defendants Starwood Global Opportunity Fund VI-A and Starwood Global Opportunity Fund VI-B ("Starwood"). Compl. ¶ 12. The other three named defendants are, essentially, managers of Starwood Funds A and B. Id. ¶¶ 5-6.

In May 2008, a few months prior to the opening of the Hacienda Beach Club, Plaintiff and Desarrollo (through an affiliate) negotiated and executed the Property and Rental Management Term Sheet (the "Term Sheet"). Id. ¶ 17, Ex. 1 ("Term Sheet"). Under the term sheet, the parties also agreed to "negotiate exclusively with one another for a period of 90 days following the date hereof in an effort to finalize the other aspects of their agreements." Term Sheet § X. Plaintiff alleges that Defendants breached this exclusivity provision by secretly negotiating with other, less costly property management companies in the weeks following the execution of the term sheet. Compl. ¶ 19.

Nevertheless, the parties ultimately reached an agreement in December 2008. The resulting twenty-year Management Agreement provided that Plaintiff was to manage and operate the Hacienda Beach Club for a base fee of $50,000 per month and incentive fees based on profits. Compl. ¶ 37, Ex. 18 ("Mgmt. Agr."). Under the

2

Management Agreement, Plaintiff was to meet "the standards of [the] Four Seasons and similarly positioned luxury hotels, and . . . Villas del Mar," another luxury residential community in Cabo San Lucas managed by Plaintiff. Mgmt. Agr. at 14; Compl. ¶ 11.

Around the time the Management Agreement was executed, sales of Hacienda Beach Club units allegedly stalled due to the global economic crisis, Mexican drug violence, and an outbreak of the swine flu in Mexico. Id. ¶ 38. Plaintiff alleges that, due to these economic pressures, Defendants began scheming to find a way to escape their obligations under the Management Agreement. Compl. ¶ 39. Plaintiff refers to a number of emails among Defendants' agents and principals which allegedly document Defendants' intent to breach the agreement and replace Plaintiff with a property manager that would accept lower fees. See, e.g., id. ¶¶ 40-50. Allegedly, the first step in the process was appointing a new general manager who would report directly to Defendants. See, e.g., id. ¶ 47. Defendants then allegedly used the new general manager along with a number of their consultants to "concoct[] an extensive list of baseless breaches of the Management Agreement by [Plaintiff] and use these alleged breaches as [a] pretext . . . to cause Desarrollo to terminate the Management Agreement." Id. ¶ 53.

On August 20, 2010, Plaintiff initiated an arbitration against Desarrollo, alleging wrongful termination of the Management Agreement and seeking, among other things, all fees and incentive fees due under the agreement. ECF No. 23 ("RJN") Ex. C ("Arbitration. Compl."). The Management Agreement's arbitration clause called for a three-member panel of individuals with "hospitality industry" experience (the "Panel"): one appointed by

each party, with the appointees selecting a chairperson. Mgmt. Agr. § 14.2.1. The Panel allowed the parties to engage in discovery, including document productions, depositions, and two rounds of expert reports. RJN Ex. G. A hearing was held October 3 and 4, 2011, and the Panel heard opening statements and a portion of Plaintiff's case-in-chief. RJN Ex. B. On the second day of the hearing, Plaintiff informed the Panel that it would withdraw all of its claims with prejudice. Id. The Panel then entered a "final and binding" award confirming Plaintiff's withdrawal. Id. On January 10, 2012, the Supreme Court of the State of New York granted a petition to confirm the arbitration award. RJN Ex. A.

Plaintiff filed the instant action on January 25, 2012, alleging many of the same facts asserted in its arbitration complaint. However, the causes of action alleged here, all of which sound in tort, are different than the contract claim asserted in the arbitration. Specifically, Plaintiff now asserts claims for: (1) tortious interference with contract; (2) fraud and aiding and abetting fraud and fraudulent inducement; (3) aiding and abetting tortious breach of the duty of good faith and fair dealing. Compl. ¶¶ 63-75. Plaintiff also seeks damages and exemplary damages.

**III. DISCUSSION**

Defendants argue that (1) Plaintiff's entire action is barred by res judicata pursuant to the New York Supreme Court's order confirming Defendants' arbitration award; and (2) Plaintiff's claims contain other incurable defects. The Court agrees with the first contention and, therefore does not reach the second.

4

**A.  Choice of Law**

The Court first addresses the issue of what res judicata law to apply. In their initial briefing, Plaintiff and Defendants agreed that the Court should apply the law of the forum state, California. See MTD at 9; Opp'n at 3. After the Court requested supplemental briefing on the issue, Defendants changed course, arguing that New York law should apply because the Court must decide the preclusive effect of a New York judgment. Defs.' Supp. Br. at 1. The Court finds that applying California law is the better course.

In doing so, the Court follows a line of authority holding that a federal court, sitting in diversity, should apply the substantive preclusion law of the forum state See Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 508-09 (2001); Jacobs v. CBS Broad., Inc., 291 F.3d 1173, 1177 (9th Cir. 2002); Pardo v. Olson & Sons, Inc., 40 F.3d 1063, 1066 (9th Cir. 1994); Bates v. Union Oil Co. of California, 944 F.2d 647, 649 (9th Cir. 1991). This rule is consistent with the principle enunciated by the Supreme Court in Erie Railroad Co. v. Tompkins, 304 U.S. 64, 77 (1938): "[e]xcept in matters governed by the Federal Constitution or by acts of Congress, the [substantive] law to be applied in any case is the law of the state." See Semtek, 531 U.S. at 508-09 ("any other rule would produce the sort of forum-shopping and inequitable administration of the laws that Erie seeks to avoid").

Defendants acknowledge this authority, but argue that the Court should instead follow the Ninth Circuit's decision in Noel v. Hall, 341 F.3d 1148 (9th Cir. 2003). Defs.' Supp. Br. at 1-2. In that case, the plaintiff brought a number of state and federal

wire-tapping claims. Noel, 341 F.3d at 1153. In deciding whether those claims were barred by res judicata, the Court applied the "[preclusion] rules chosen by the State from which the judgment was taken." Id. at 1166 (internal quotations omitted). The case had originally been filed in the District of Oregon, but the Ninth Circuit chose to apply the preclusion rules of Washington, the state that issued the purportedly preclusive judgments at issue. Id. at 1153, 1166. The Ninth Circuit reasoned that, under 28 U.S.C. § 1738, federal courts must give "full faith and credit" to the judgments of state courts. Id. at 1166. The Court is not persuaded that the Noel rule is applicable here. Unlike the instant action, Noel involved a number of federal law claims, including alleged violations of the federal wiretap law and blackmail in violation of 18 U.S.C. § 873.[1] Id. at 1153. Thus, it appears that the Noel court was exercising federal question jurisdiction. As this Court is sitting in diversity, the better course is to apply the res judicata law of the forum.

For these reasons, the Court applies California law to determine whether Plaintiff's action is barred by res judicata.[2]

---

[1] Likewise, the other case cited by Defendants in support of applying New York law was not decided by a federal court sitting in diversity. See Myer v. Americo Life, Inc., 05-0718MCWDW, 2005 WL 3007117, at *1 (W.D. Mo. Nov. 8, 2005) ("Plaintiff . . . seeks relief under federal law"), aff'd on other grounds, 469 F.3d 731 (8th Cir. 2006).

[2] The ultimate outcome of this case would remain the same if the Court were to apply New York res judicata law. The primary distinction between New York and California's res judicata laws is the different tests used to determine whether a later action involves the same cause of action as the first one. California courts use a primary rights analysis to make this determination. See infra Section III.B.1. New York courts use a far broader transactional test, whereby, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different

6

### B. Res Judicata (Claim Preclusion)

The doctrine of res judicata provides that "a valid, final judgment on the merits precludes parties or their privies from relitigating the same 'cause of action' in a subsequent suit." Le Parc Cmty. Ass'n v. Workers' Comp. Appeals Bd., 110 Cal. App. 4th 1161, 1169 (2003). Under California law, three requirements must be met for res judicata to apply:

> (1) the second lawsuit must involve the same "cause of action" as the first one, (2) there must have been a final judgment on the merits in the first lawsuit and (3) the party to be precluded must itself have been a party, or in privity with a party, to that first lawsuit.

San Diego Police Officers' Ass'n v. San Diego City Employees' Ret. Sys., 568 F.3d 725, 734 (9th Cir. 2009) (applying California law). The Court addresses each of these factors below and finds that Plaintiff's claims are barred.

#### 1. This suit involves the same cause of action as the arbitration

For the purposes of res judicata analysis, California courts define a cause of action by focusing on the primary right at stake. Le Parc, 110 Cal. App. at 1170. Under this primary rights theory, "a 'cause of action' is comprised of a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant, and a wrongful act by the defendant constituting a breach of that duty." Crowley v. Katleman, 8 Cal. 4th 666, 681 (Cal. 1994). "The most salient characteristic of a primary right is that it is

---

theories . . . ." O'Brien v. City of Syracuse, 54 N.Y.3d 353, 357-58 (1981). Plaintiff's claims would be barred under New York res judicata law since they arise out of the same transaction as the claims brought in the prior arbitration proceedings.

7

indivisible: the violation of a single primary right gives rise to but a single cause of action." Id. "[I]f two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery." Tensor Grp. v. City of Glendale, 14 Cal. App. 4th 154, 160 (Cal. Ct. App. 1993).

Here, Plaintiff pled a breach of contract claim against Desarrollo in the arbitration and asserts three tort claims against Defendants in the instant action. Though the causes of action in the two suits are different, the alleged injuries and the alleged wrongs are the same. In the arbitration, Plaintiff alleged a breach of the Management Agreement and sought to recover all fees and payments due under the agreement. Arbitration Comp. ¶¶ 54, 56. Likewise, the three causes of action alleged in the instant action are predicated on the allegedly wrongful breach of the Management Agreement and the lost fees that resulted from that breach. See Compl. ¶¶ 65, 70, 72. Plaintiff cannot avoid the preclusive effect of the arbitration award merely by pleading different legal theories. See Tensor Grp., 14 Cal. App. 4th 160.

Plaintiff argues "there is a significant difference between the primary right, arising under a contract, to provide services[,] versus the primary right, arising under the common law, to be free from a third party's trickery and subterfuge in the course of performing under a contract with another party."[3] Opp'n at 6.

---

[3] Plaintiff also argues that the two actions must involve different primary rights since torts like fraud and tortious interference require different proof and elements than breach of contract

8

This argument lacks merit since it focuses on the distinction between the legal theories pled in the two actions. Instead, the focus should be on the difference between the alleged injuries and the distinction between the alleged wrongs. There is none. Further, Plaintiff's attempt to characterize Defendants as third parties to the agreement between Plaintiff and Desarrollo is unpersuasive. Desarrollo is a trust -- a legal fiction -- and Defendants, as a group, are its principal owner and parent. Compl. ¶¶ 18, 64 n.74. In fact, Plaintiff often refers to Desarrollo and Starwood interchangeably in the Complaint. See, e.g., Comp. ¶¶ 36, 66. Defendants' alleged "trickery and subterfuge" rests on the same set of facts as Desallarro's alleged breach.[4]

    Plaintiff cites to a number of California cases where courts found that separate contract and tort actions involved different primary rights. Opp'n at 6-8. These cases are distinguishable since the purported preclusive judgments at issue involved different sets of facts or different sets of injuries than the later actions. See Sargon Enters., Inc. v. Univ. of S. Cal., B167519, 2005 WL 435413, *at 12 (Cal. Ct. App. Feb. 25, 2005) ("[T]he mere failure of performance of the clinical trial agreement does not violate the same primary right as actions deliberately and fraudulently undertaken to destroy the reputation of the implant by altering patient records [and] accepting bribes from plaintiff's

---

claims. Pls.' Opp'n at 6. If this were true, then a plaintiff could always avoid res judicata by recasting the same primary right under different cause of action. But that is clearly not the law. See Tensor Grp., 14 Cal. App. 4th 160.

[4] This is evident from the Complaint itself, which cites to and attaches a significant number of internal documents which were likely obtained through discovery in the arbitration.

competitor."); Brenelli Amedeo, S.P.A. v. Bakara Furniture, Inc., 29 Cal. App. 4th 1828, 1837 (Cal. Ct. App. 1994) ("[T]he right to have contractual obligations performed is distinct from the right to be free from tortious behavior preventing collection of a judgment."); Sawyer v. First City Fin. Corp., 124 Cal. App. 3d 390, 402 (Cal. Ct. App. 1981) ("the basis of the [tort] claim is completely different, and rests upon a completely separate set of facts").

For these reasons, the Court finds that the instant suit involves the same cause of action as the arbitration.

### 2. The arbitration resulted in a final judgment on the merits

The second factor in the res judicata analysis -- a final judgment on the merits -- is also satisfied here. After litigating their arbitration claims for over a year, Plaintiffs chose to withdraw the claims with prejudice. California courts give arbitrations the same claim preclusive effect as court actions. See Richard B. LeVine, Inc. v. Higashi, 131 Cal. App. 4th 566, 572-79 (Cal. Ct. App. 2005); Brinton v. Bankers Pension Servs., Inc., 76 Cal. App. 4th 550, 556-58 (Cal. Ct. App. 1999). Further, "for purposes of applying the doctrine of res judicata . . . , a dismissal with prejudice is the equivalent of a final judgment on the merits, barring the entire cause of action." Boeken v. Philip Morris USA, Inc., 48 Cal. 4th 788, 793 (Cal. 2010).

Relying on Le Parc, Plaintiff argues that "the [arbitration] award cannot constitute a final judgment on the merits . . . because the voluntary withdrawal of claims resulted in nothing being 'actually litigated or necessarily decided' in the

arbitration." Opp'n at 9 (quoting Le Parc, 110 Cal. App. 4th at 1174). The language Plaintiff cites from Le Parc is inapposite as it concerns collateral estoppel, not res judicata. Indeed, it would make little sense to inquire whether an issue has been "actually litigated or necessarily decided" for the purposes of determining whether a claim is precluded.

Plaintiff also argues that the arbitration award cannot operate as a final judgment on the merits because the arbitration panel never addressed the merits of the parties' dispute. Opp'n at 9. Plaintiff does not contest that a voluntary dismissal with prejudice before a state court can trigger res judicata. See id. Rather, Plaintiff urges the Court to apply a different rule in the arbitration context. The Court sees no reason to do so. Res judicata "is intended to preserve the integrity of the judicial system, promote judicial economy, and protect litigants from harassment by vexatious litigation." Vandenberg v. Super. Ct., 21 Cal. 4th 815, 982 (Cal. 1999). This reasoning applies with equal force to arbitration proceedings, especially where, as here, the parties previously arbitrated for over a year.

Finally, Plaintiff argues that a withdrawal with prejudice only triggers res judicata in successive lawsuits between the same parties. The Court is aware of no such limitation. Further, Plaintiff's position runs contrary to prevailing case law, which allows for the application of res judicata where the defendants in a later action are in privity with the defendants in the first action. See Boeken, 48 Cal. 4th at 797. Such is the case here. See infra Section IV.B.3.

For these reasons, the Court finds that there was a final judgment on the merits in Plaintiff's prior arbitration proceedings.

### 3. Plaintiff and Defendants were adverse parties in the arbitration

Plaintiff does not contest that the final factor in the res judicata analysis -- that there be an identity of the parties in the two actions -- is satisfied here. Accordingly, the Court will not go into great detail on this issue. Suffice it to say, this factor is satisfied because Hacienda Management is the plaintiff in both cases and the defendants in this action are in privity with Desarrollo, the respondent in the arbitration. See San Diego Police Officers' Ass'n, 568 F.3d at 734.

## IV. CONCLUSION

For the reasons set forth herein, the Court finds that Plaintiff Hacienda Management's action is barred by res judicata. Accordingly, the Court GRANTS Defendants Starwood Capital Group Global I LLLC, Starwood Global Opportunity Fund VI-A, Starwood Global Opportunity Fund VI-B, SOF-VI Management, LLC and Starwood Capital Group Management LLC's motion to dismiss and DISMISSES Plaintiff's action WITH PREJUDICE.

IT IS SO ORDERED.

Dated: July 10, 2012

UNITED STATES DISTRICT JUDGE